# EXHIBIT "R"

CHARLES NNADI



Page 1

2015-00958
SF-J, Lax

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

KAMILAH BROCK,

                  Plaintiff,

    -against-

THE CITY OF NEW YORK, NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, HARLEM HOSPITAL, DR.
ELISABETH LESCOUFLAIR, Individually and in her
Official Capacity, DR. ZANA DOBROSHI, Individually
and in her Official Capacity, DR. ALAN DUDLEY LABOR,
Individually and in his Official Capacity, and
POLICE OFFICER SALVADOR DIAZ, Shield No. 21953,
Individually and in his Official Capacity,

                  Defendants.

15 CV 1832 (VSB)

------------------------------------------------X

                32 Old Slip
                New York, New York

                July 5, 2016
                10:23 a.m.

        EXAMINATION BEFORE TRIAL of Non-Party witness CHARLES NNADI, taken by the Plaintiff, held at the above time and place, before Joseph Adler, a Stenotype Reporter and Notary Public of the State of New York, pursuant to Notice and stipulations between counsel.

1            NNADI
2  don't want to take Haldol, is it permissible to
3  administer intramuscular short-acting Haldol to the
4  patient?
5       A    It is not permissible to administer any
6  medication to a patient who says they don't want
7  medication.  We have a process in our unit where if
8  the patient refuses medication, we go to an
9  administrative hearing, and as I mentioned, we go to
10 court to obtain medication over objection.  So if
11 the patient says no, we would not force them to take
12 medication that they said no.
13      Q    Including short-acting Haldol?
14      A    Yes.
15      Q    Do you know if there were any
16 administrative hearings with regard to Kamilah
17 Brock's treatment?
18      A    My understanding is that the situation
19 that led from reading the chart was because of acute
20 dangerousness, and as I mentioned, if a patient is
21 acutely dangerous and we do not have the -- we
22 didn't have a hearing and the person will harm
23 themselves or harm others.  So in case of an
24 emergency, we would not begin to go through the
25 administrative process because an emergency exists,

1                    NNADI
2   if that's your question.
3       Q    So did you believe that Kamilah Brock was
4   acutely dangerous?
5            MR. LAX:  Objection.
6       A    When I saw her, she was paranoid; she was
7   psychotic, as I mentioned in my notes, and as I also
8   mentioned today, those elements can result in an
9   unpredictable situation.
10      Q    Right.  But you did not administer Haldol
11  for her?
12      A    I did not.
13      Q    Okay.
14      A    Yes.
15      Q    But other people did three times, correct,
16  based on your review of the medical records?
17      A    Yes.
18      Q    Would it have been appropriate for the
19  doctors to seek permission from a judge to
20  administer the second shot of Haldol to Kamilah
21  Brock?
22           MR. LAX:  Objection.
23      A    As I said, I do not know what transpired
24  that led to the decision to medicate Ms. Brock.
25      Q    Based on you review of the medical