Docket No.  15 Civ. 1832 (VSB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMILAH BROCK,

                                    Plaintiff,

- against -

THE CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, HARLEM HOSPITAL, DR. ELISABETH LESCOUFLAIR, Individually and in her official capacity, DR. ZANA DOBROSHI, Individually and in her official capacity, DR. ALAN DUDLEY LABOR, Individually and in his official capacity, DR. HERMAN ANDERSON, Individually and in his official capacity, and POLICE OFFICER SALVADOR DIAZ, Shield No. 21953, Individually and in his official capacity,,

                                    Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
    *Attorney for Defendants*
    *100 Church Street*
    *New York, N.Y.  10007*

    *Of Counsel:  JOSHUA J. LAX, ESQ.*
    *Tel:  (212) 356-3538*
    *Matter No.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

    POINT I

        THE HEARSAY OF ROY LUBIT, M.D. FAILS TO CREATE A MATERIAL DISPUTE OF FACT WARRANTING A TRIAL .......................................................................... 1

    POINT II

        PLAINITIFF'S RELIANCE ON RODRIGUEZ V. CITY OF NEW YORK IS MISPLACED ................................................... 7

    POINT III

        PLAINTIFF FAILS TO DEMONSTRATE A DISPUTE OF FACT WARRANTING A TRIAL AGAINST OFFICER DIAZ ....................................................................... 8

    POINT **IV**

        PLAINTIFF HAS ABANDONED ALL CLAIMS AGAINST THE CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION AND HARLEM HOSPITAL ..................................... 10

CONCLUSION ............................................................................................................. 11

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                                                                 **Pages**

Ahmad v. Port Auth. of N.Y. & N.J.,
   No. 09-CV-3134, 2011 U.S. Dist. LEXIS 152060, 2011 WL 7080691,
   (E.D.N.Y. Dec. 7, 2011), 2012 U.S. Dist. LEXIS 7299, 2012 WL 194965
   (E.D.N.Y. Jan. 23, 2012) ..................................................................................................10

Anthony v. City of New York,
   00 CIV. 4688 (DLC), 2001 U.S. Dist. LEXIS 8923 (S.D.N.Y. July 2, 2001),
   *aff'd* 339 F.3d 129 (2003) ..................................................................................................8

Berk v. St. Vincent's Hosp. & Med. Ctr.,
   380 F. Supp. 2d 334 (S.D.N.Y. 2005)..................................................................................9

Britt v. Buffalo Mun. Hous. Auth.,
   827 F. Supp. 2d 198 (W.D.N.Y. 2011) .............................................................................2, 3

Kraft v. City of New York,
   696 F. Supp. 2d 403 (S.D.N.Y. 2010)..................................................................................3

Krynski v. Chase,
   707 F. Supp. 2d 318 (E.D.N.Y. 2009) .................................................................................8

Kulak v. City of New York,
   88 F.3d 63 (2d Cir.1996)..............................................................................2, 3, 5, 6, 7

Lipton v. Cnty. of Orange,
   315 F. Supp. 2d 434 (S.D.N.Y. 2004)................................................................................10

Newton v. City of New York,
   738 F. Supp. 2d 397 (S.D.N.Y. 2010)................................................................................10

Rodriguez v. City of New York,
   72 F.3d 1051 (2d Cir. 1995)..............................................................................................7, 8

Smith v. N.Y.C. Dep't of Educ.,
   No. 09-CV-9256, 2011 U.S. Dist. LEXIS 125069, 2011 WL 5118797
   (S.D.N.Y. Oct. 28, 2011) ...................................................................................................10

Taylor v. City of New York,
   269 F. Supp. 2d 68 (E.D.N.Y. 2003) .................................................................................10

Vasconcellos v. City of New York,
   Docket No. 12 Civ. 8445 (CM), 2015 U.S. Dist. LEXIS 121572
   (S.D.N.Y. Sept. 9, 2015)......................................................................................................9

| **Cases** | **Pages** |

Weisfelner v. Blavatnik (In re Lyondell Chem. Co.),
    558 B.R. 661 (Bankr. S.D.N.Y. 2016) ................................................................................3

**Statutes**

Rule 56 ............................................................................................................................................9

Rule 56.1 .........................................................................................................................................4

§ 1983 ..............................................................................................................................................2

**Other Authorities**

N.Y. Comp. Codes R. & Regs.,
    tit. 14, § 527.8(c)(1) (1995) ................................................................................................5

## POINT I

### THE HEARSAY OF ROY LUBIT, M.D. FAILS TO CREATE A MATERIAL DISPUTE OF FACT WARRANTING A TRIAL

Plaintiff submits the report of Roy Lubit. As an initial matter, this report is inadmissible in this motion because it constitutes hearsay without an exception. Further, this report was not sworn under the penalty of perjury. As a result, the Court should decline to accept the report as a part of the record on this motion. To the extent the Court is willing to consider Lubit's contentions, defendants address how Lubit nonetheless fails to demonstrate that summary judgment should be denied.

First, Lubit fails to explain at how the diagnosis of bipolar disorder is incorrect. Lubit, a paid expert, is at odds with at least six other medical professionals that plaintiff was in a manic or psychotic state. Three of those professionals are defendants (excluding Dr. Anderson who is not a psychiatrist), but the rest are non-parties. As noted in defendants' moving papers, the doctors describe a host of behaviors and statements by plaintiff, much of which was corroborated by plaintiff's deposition testimony. In fact, plaintiff testified that all but a couple of statements in the medical records attributed to her were true. Lubit addresses none of these facts. Instead, Lubit focuses on two facts, the statement about the President following plaintiff on Twitter and the idea that plaintiff needs a college degree to be a banker and argues that those statements could not possibly be considered grandiose. His contention is incorrect for several reasons. First, plaintiff admits that she told the doctors about President Obama following her on Twitter to show how important she was and should not be in the hospital as a result. In other words, even if true, this statement was given to the providers in a grandiose way. Second, Lubit puts emphasis on whether someone needs a college degree to be a banker. That expectation is

not unreasonable on the part of the doctors as that term, banker, usually denotes a higher ranking official at a bank.

More importantly, however, is that Lubit focuses on these items to the detriment of all other information upon which the diagnosis and treatment was based. Lubit gives no consideration to any of the significance attached to plaintiff's use of marijuana, her description of driving without her hands on the wheel, and other claims plaintiff made about her place in the world. The marijuana use is particularly important as there is no dispute that plaintiff repeatedly told hospital personnel that she used medicinal marijuana, used it recreationally, and that she was driving following the consumption of marijuana. Lubit gives no attention to what bipolar disorder, its symptoms and how it is supposed to be treated. Likewise, Lubit fails to explain how medicating plaintiff with Haldol was inappropriate in light of the symptoms she demonstrated. In this circuit, "'a doctor will not be liable under § 1983 for the treatment decisions she makes unless such decisions are "such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually did not base the decision on such a judgment."' This standard requires more than simple negligence on the part of the doctor but less than deliberate indifference." Britt v. Buffalo Mun. Hous. Auth., 827 F. Supp. 2d 198, 207-08 (W.D.N.Y. 2011) (quoting Kulak v. City of New York, 88 F.3d 63, 75 (2d Cir.1996)). Lubit fails to explain how any of the actual facts observed or relied upon by the doctors constituted a substantial departure from accepted judgment, practice or standards. At times he discusses that mistakes were made, or that more time should have been spent considering a particular issue. That is to say, he is describing at best ordinary negligence. He never discusses what the accepted judgment, practice or standard is, and how there was a substantial departure. Just as in Kulak, Lubit's report "does not create a fact issue because his affidavit does not assert that it was

substantially below accepted professional judgment for the treating physicians to believe that [plaintiff] was manic or psychotic." Supra, 88 F.3d at 75.

Further, his criticism of the doctors, and he is the only doctor in the record to take this position, has no basis whatsoever. For example, he repeatedly asserts that too little time was spent with plaintiff, there needed to be more evaluation, and the doctors did not write enough in some of the notes. The pertinent records, however, show that a large quantity of accurate information was recorded by the doctors. Lubit fails to explain how the duration of the evaluations was somehow detrimental, or what more evaluating and assessing needed to take place.

In essence, Lubit is merely arguing for an alternative view of some of the facts. For example, he posits that some of plaintiff's agitation could have been her frustration with being hospitalized. These sorts of arguments, however, are routinely rejected by Court's as a vehicle to defeat summary judgment. In Kulak, for example, the Second Circuit affirmed a district court that rejected a retained expert's opinion that simply disagreed with the diagnosis made by the treating physicians. Supra, 88 F.3d at 75. Similarly, a district court, citing Kulak, made a similar conclusion. Kraft v. City of New York, 696 F. Supp. 2d 403, 413 (S.D.N.Y. 2010) ("Excerpts from her deposition testimony provided by the City and plaintiff largely consist of questions and disagreements about the doctor defendants' perceptions, diagnoses, and subsequent actions. Such statements are not sufficient to raise material issues regarding the treatment decisions made by the doctor defendants."). It should also be noted that factual narratives and conclusions about the motivations of the parties are the types of expert testimony that are typically excluded. Weisfelner v. Blavatnik (In re Lyondell Chem. Co.), 558 B.R. 661, 666 (Bankr. S.D.N.Y. 2016); see also Britt, supra, 827 F. Supp. 2d at 208. Thus, because Lubit

3

is simply constructing his own narrative of what happened to justify his conclusions, his "evidence" is inadmissible.

Lubit and plaintiff's counsel also focus incorrectly on what constituted dangerousness or harm to self in this case.  Both counsel and their hired expert concern themselves with the lack of an explicit threat, such as statements or actions by plaintiff evidencing her intent to physically harm or attack herself or another.  There is no dispute that such overt threats were not made.  This focus, however, ignores all the factors that led the doctors to conclude that plaintiff needed observation and care because she was at risk of engaging in dangerous behavior.  These factors were set forth at length in defendants opening motion papers, both in their Rule 56.1 Statement and their brief.

Lubit's conclusion regarding the use of Haldol is similarly flawed.  Lubit states in a conclusory fashion that under no circumstances was there a justification to give Haldol injections.  At the same time, Lubit acknowledges that plaintiff claims she was given an injection after slamming doors and acting angry.  Similarly, the medical records state that plaintiff tried to leave the medical emergency room while in handcuffs, which accords with plaintiff's explanation of her behavior immediately preceding the first injection by an identified hospital staffer.  Because this a motion for summary judgment, the Court is obligated to take the facts from plaintiff's version as true, and it is those facts which govern whether plaintiff can survive summary judgment.  Because Lubit only discusses Dr. Anderson's testimony, he doesn't comment on how plaintiff says she was injected the first time.

In any event, Lubit's conclusion that no justification existed for the injections has already been rejected by the Second Circuit.[1] In <u>Kulak</u>, the Second Circuit affirmed summary judgment in favor of a doctor who "prescribed a low-level injection of Haldol and Ativan to counteract Kulak's 'escalating irritability.'" <u>Supra</u>, 88 F.3d at 68. The Court went on to analyze whether the doctor's actions comported with the state regulation governing the right to object to medical treatment and the emergency exception thereto:

> (c) Patients who object to any proposed medical treatment or procedure . . . may not be treated over their objection except as follows:
> (1) Emergency treatment. Facilities may give treatment, except electroconvulsive therapy, to any inpatient, regardless of admission status or objection, where the patient is presently dangerous and the proposed treatment is the most appropriate reasonably available means of reducing that dangerousness. Such treatment may continue only as long as necessary to prevent dangerous behavior.

<u>Id</u>. at 74 (quoting <u>N.Y. Comp. Codes R. & Regs.</u>, tit. 14, § 527.8(c)(1) (1995)). The Court also explained that the regulation defined a patient as dangerous "as one who 'engages in conduct or is imminently likely to engage in conduct posing a risk of physical harm to himself or others.'" <u>Id</u>. The plaintiff claimed that the circumstances did not justify the involuntary medication.

In granting summary judgment, the Court construed the evidence in the light most favorable to the plaintiff, and did not consider the doctor's account. <u>Id</u>. The Court looked to plaintiff's admissions and the contemporary records. Thus, the doctor prevailed based on the plaintiff's admission that he was angry, that other doctors had diagnosed the plaintiff as having bipolar disorder and anxiety, and a report from the family that plaintiff had made threats against

---

[1] <u>Kulak</u> appears to suggest that every argument advanced by Lubit cannot defeat summary judgment. In addition to those already discussed above, the Second Circuit appeared to have no issue with the brevity of the doctor's notes, the relatively short durations of the examinations, including a five minute interaction that led to the administration of Haldol, the gathering of collateral information through the family and reliance on other doctors. <u>See</u> <u>supra</u>, 88 F.3d at 67-68, 74-75.

5

himself and his family at some point prior to the encounter with the doctor defendant.  Id.  These factors were sufficient for the Court to conclude that the doctor had exercised his professional judgment and comported with the state regulations.  Id. at 74-75.

Applying Kulak to the injections here, plaintiff maintains that someone injected her with a substance after she approached security and said she is supposed to be at her car.  All this occurred, presumably, while she was handcuffed.  According to the medical records, plaintiff tried to walk out of the hospital in handcuffs.  The medical records reflect that the police reported that plaintiff was screaming, had run out, and nurses observed plaintiff to be disorganized. (Defendants' Exhibit "K" at p. D 224).  Under these circumstances, a doctor could reasonably conclude that plaintiff was required to be medicated because she posed a threat of harm to herself.

The same is true of the latter injections in CPEP.  No matter whose version is credited, plaintiff undisputably became agitated and angry in the middle of the psychiatric emergency room in the presence of other patients.  As Dr. Labor explained in his deposition, this behavior creates a threat of physical harm because these disturbances could escalate into a full physical altercation.  Thus, contrary to Lubit's contentions, the injections given to plaintiff were lawful.

Lubit makes much of the notion that the Haldol was administered to allow the doctors, particularly Dr. Anderson, to conduct an evaluation.  That analysis is flawed as well, since at the time Dr. Anderson is examining plaintiff, his purpose is to determine whether plaintiff is behaving the way she is because of medical problem versus an emotional or psychiatric problem.  If plaintiff in a state where he cannot get answers to his questions, and he is unable to determine if plaintiff ingested a potentitally dangerous substance, or he believes

6

plaintiff may lash out at any moment because she is agitated or irate following her attempt to escape from the emergency room, that too would be sufficient dangerous conduct that would justify medication to alleviate the threat.

Lastly, Lubit's assertion that the hospital should have verified some of plaintiff's claims is a red herring. First, as noted, the claim regarding President Obama even if true, in context, was grandiose. Second, at the time plaintiff at was unemployed, and the doctors did inquire about employment from the family. Third, if the doctors had inquired, they would have learned plaintiff was not a banker as such, but she processed checks for claims and worked in a local branch as a teller. In other words, the notion that somehow the doctors were mistaken due to some failure to verify plaintiff's claims is of no moment. They would not have learned anything that would have changed their belief that plaintiff was grandiose and manic.

## POINT II

### PLAINITIFF'S RELIANCE ON RODRIGUEZ V. CITY OF NEW YORK IS MISPLACED

Plaintiff relies on Rodriguez v. City of New York, 72 F.3d 1051 (2d Cir. 1995) in urging the Court to deny summary judgment. Such reliance is misplaced. As the Second Circuit subsequently explained,

> The dispute in Rodriguez, however, concerned events in two short commitment interviews, lasting no more than one half hour combined, that took place after Rodriguez had come to the hospital seeking medication. Moreover, Rodriguez conceded that she had made some of the statements the doctors claimed to rely upon in confining her, but claimed that she also made related statements ignored by the doctors "that would permit competing inferences to be drawn as to the meanings of the undisputed events."

Kulak, supra, 88 F.3d at 76. The Second Circuit distinguished Rodriguez from Kulak, where the plaintiff was observed for several days following a petition by the plaintiff's father. Id. Similarly, Rodriguez was held inapplicable and the reasoning of Kulak applied where facts in the

7

medical records were undisputed by the plaintiff. Anthony v. City of New York, 00 CIV. 4688 (DLC), 2001 U.S. Dist. LEXIS 8923, at *31-32 (S.D.N.Y. July 2, 2001), *aff'd* 339 F.3d 129 (2003).

This matter is similar to Anthony, in that plaintiff does not dispute large portions of the medical records upon which her diagnosis and treatment were based. Where she does dispute the medical records, such as her denial that she went into patients rooms, she does admit sufficient facts justifying the use of an injection. Therefore, the reasoning of Rodriguez is inapplicable to this case.

### POINT III

**PLAINTIFF FAILS TO DEMONSTRATE A DISPUTE OF FACT WARRANTING A TRIAL AGAINST OFFICER DIAZ**

In an effort to defeat summary judgment, plaintiff surprisingly fails to address defendants' arguments regarding plaintiff's admissions that warrant summary judgment in favor of Officer Diaz, and instead offers piecemeal Officer Diaz's testimony to say that a jury could choose to disbelieve him. Theoretically that may be true, but that argument is of no moment because if fails to address the actual basis of defendants' motion, the facts as admitted by plaintiff that justified her arrest pursuant to the Mental Hygiene Law.

Further, plaintiff cannot create dispute of fact by showing the adverse party testified differently. Krynski v. Chase, 707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009)(" The fact that opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment."). In addition, an "attempt to create a genuine issue for trial by asking the Court to selectively disregard his prior sworn testimony and selectively credit directly contradictory testimony of his adversaries is analogous to other situations in which non-moving parties have attempted to create an issue for trial by submitting materials that contradict their

previous sworn statements." Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 346, n.19 (S.D.N.Y. 2005). In other words, offering the testimony of the opposing witnesses to defeat the motion is akin to offering a sham affidavit. Id. Where, as here, plaintiff gave testimony that is damning to her own case, there is no basis to "selectively disregard the portions of [plaintiff]'s statements that are prejudicial and credit those that are favorable, and to undo the damage by filling in the detrimental gaps with similarly convenient parts of Defendants' account." Id. In fact, Rule 56 requires that the Court take the non-movant's account as true in deciding summary judgment. Vasconcellos v. City of New York, Docket No. 12 Civ. 8445 (CM)(HBP), 2015 U.S. Dist. LEXIS 121572, 4-5 (S.D.N.Y. Sept. 9, 2015) ("Such a motion is futile if there are disputed issues of fact, and the officers contradicted Derbie's testimony in every salient particular. So the City made an "even if" motion and asked the court to assume, for purposes of argument only, that everything Derbie said was true. Rule 56 would have required me to do so in any event, since a court must view the facts most favorably to the non-moving party when deciding a motion for summary judgment, and the officers' testimony does not described the facts in a manner that is at all "favorable" to plaintiff.").

As the Court in Berk noted, "the mere presence of contradictory testimony does not establish the existence of a genuine issue for trial where the conflicting testimony, even if credited by the Court, would nonetheless fail to establish Defendants' liability." Id.. (emphasis in original). Thus, if plaintiff is willing to concede the credibility of the Officer's testimony, than summary judgment should be granted on all her claims. The implicit argument is that a fact finder should discredit his own sworn testimony and accept that of her opponent.

Based on the foregoing, plaintiff's arguments should be rejected and summary judgment granted in favor of Officer Diaz.

9

## POINT IV

## PLAINTIFF HAS ABANDONED ALL CLAIMS AGAINST THE CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION AND HARLEM HOSPITAL

Defendants moved for summary judgment in favor of the City of New York, New York City Health and Hospitals Corporation and Harlem Hospital and included supporting arguments in the memorandum of law. Plaintiff advanced no argument as to why summary judgment should not be granted. Where a party fail to oppose summary judgment on a specific ground or claim, that claim is deemed abandoned. Newton v. City of New York, 738 F. Supp. 2d 397, 416 n.130 (S.D.N.Y. 2010) ("Newton did not respond to defendants' motion to dismiss his claim against the City for Ryan's wrongdoing in his Opposition Brief, and therefore abandoned his claim."); Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); Ahmad v. Port Auth. of N.Y. & N.J., No. 09-CV-3134, 2011 U.S. Dist. LEXIS 152060, 2011 WL 7080691, at *3 n.9 (E.D.N.Y. Dec. 7, 2011) (deeming pro se plaintiff's claims abandoned when he did not address those claims in his opposition to summary judgment and where there was no basis for the claims in the record), adopted by 2012 U.S. Dist. LEXIS 7299, 2012 WL 194965 (E.D.N.Y. Jan. 23, 2012); Smith v. N.Y.C. Dep't of Educ., No. 09-CV-9256, 2011 U.S. Dist. LEXIS 125069, 2011 WL 5118797, at *6 n.8 (S.D.N.Y. Oct. 28, 2011) (finding that pro se plaintiff abandoned claims he did not address in his opposition to summary judgment); Lipton v. Cnty. of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (noting that courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

Because plaintiff fails to oppose summary judgment on all claims against the institutional defendants, plaintiff should be deemed to have abandoned those claims and summary judgment should be entered.

## CONCLUSION

Based on the foregoing and all previous submissions, defendants respectfully submit that their motion for summary judgment should be granted in its entirety.

Dated: April 17, 2017
New York, New York

ZACHARY W. CARTER
Corporation Counsel of the
City of New York
*Attorney for Defendants City of New York, Vega and Perez*
100 Church Street, Room 3-172
New York, New York 10007
(212) 356-3538


By: _____
Joshua J. Lax
Senior Counsel